IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

|  |  |
|---|---|
| IN RE: PRECIOUS LATERICA OLIPHANT | DOCKET NO. 3:18-MC-202<br><br>MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR RECONSIDERATION |

Precious Laterica Oliphant, by and through her counsel of record, First Assistant Federal Defender John Parke Davis, submits this memorandum of law in support of her Motion for Reconsideration, filed contemporaneously herewith.

**Background**

Ms. Oliphant is a single mother and primary provider for two teenage children. She works as a self-employed hair stylist, renting a chair at a beauty salon by the week, which she pays for out of the earnings she makes from her own customers. Ms. Oliphant has a high school degree, and works side jobs as needed to supplement her income. She has no criminal history to speak of, with no prior convictions beyond two traffic infractions and a Prayer for Judgment Continued from 2009. Every day, she provides for all her children's care and basic needs. Every weekday, she drives her son home from basketball practice; twice a week she picks her daughter up from cheerleading.

On November 29, 2018, as Ms. Oliphant exited the courtroom at the conclusion of a Rule 11 hearing where her boyfriend had just pleaded guilty to an attempted murder of a federal employee, she exclaimed "piece of sh*t" in "a loud angry tone." (Order, 1). It is unclear who, if anyone, this interjection was directed at. Ms. Oliphant maintains that this exclamation was a

sudden emotional outburst prompted by the situation and was *not* directed at the Court or any of its officers. This Court's Order contains nothing that would indicate to the contrary. Other than the existence of the contempt proceeding itself, the record contains no evidence that this statement, which occurred between hearings, interrupted any judicial process or otherwise interfered with the actions of any judicial employee.

This Court enacted Rule 42(b) of the Federal Rules of Criminal Procedure's summary process to immediately accuse, adjudge, and imprison Ms. Oliphant for her exclamation. After giving her an opportunity to respond, this Court imposed a ten-day sentence. Ms. Oliphant requested appointment of counsel by affidavit filed the next day, November 30, 2018. Court records reflect that this Court ordered counsel appointed that same day, but for reasons unknown, this transaction was not entered into the record or transmitted to the Federal Public Defender to assign counsel for until December 4, 2018. *See* (Text-Only Order, 3:18-MC-02000 (Dec. 4, 2018)). At this point, Ms. Oliphant has served nearly six days of her ten-day sentence.

**I- Because there was no compelling need, Rule 42(a)'s standard contempt procedure applied rather than Rule 42(b)'s disfavored summary procedure.**

"A court's power of summary contempt is one that 'always, and rightly, is regarded with disfavor.'" *United States v. Linney*, 91 F.3d 135 (4th Cir. 1996) (quoting *Sacher v. United States*, 343 U.S. 1, 8 (1952)). This is because Rule 42(b)'s summary procedures lack the standard procedural safeguards of ordinary criminal process, such as that provided by Rule 42(a); summary contempt allows the court to punish without benefit of counsel, notice, jury, indictment, or presentation of a defense, and its scope is therefore a "narrow" one. *Id.* "Only the least possible power adequate to the end proposed should be used in contempt cases." *United States v. Neal*, 101 F.3d 993, 996 (4th Cir. 1996) (internal quotations and citation omitted). This least possible power principle means "summary disposition is proper *only* when the express requirements of the rule

2

are met and when there is a *compelling* reason for an immediate remedy or time is of essence." *F.T.C. v. Trudeau*, 606 F.3d 382, 386 (7th Cir. 2010) (emphasis added); *see also United States v. Glass*, 361 F.3d 580 (9th Cir. 2004). The Fourth Circuit has held that summary contempt "should be used only to fill 'the need for immediate penal vindication of the dignity of the court.'" *United States v. Willet*, 432 F.2d 202, 205 (4th Cir. 1970) (quoting *Cooke v. United States*, 267 U.S. 517, 536 (1925)).

Here, the Court's Order fails to consider whether summary punishment under Rule 42(b) is necessary. *See United States v. Glass*, 361 F.3d 580 (9th Cir. 2004) (district court erred in employing summary contempt procedure where the situation did not require immediate assertion of court's authority to restore order and immediate incarceration was not justified as the least possible power adequate to the end proposed). Ms. Oliphant was a departing spectator who uttered three words on her way out between court proceedings. Her language did not target the Court or its personnel, and therefore did not constitute a direct threat to the Court's dignity or authority, and thus "immediate penal vindication of the dignity of the court" was not required. *Willet*, 432 F.2d at 205. Absent any evidence of such an immediate need, Rule 42(a)'s procedures should have applied, and Rule 42(b)'s summary procedures were inappropriate.

The absence of any indication of the *target* of Ms. Oliphant's comment provides a good example of why Rule 42(a)'s procedures are best suited even here, where the Court was indisputably present during the exclamation. As discussed below, a "single, isolated usage of street vernacular, not directed at the judge or any officer of the court, cannot constitutionally support the conviction of criminal contempt." *Eaton v. City of Tulsa*, 415 U.S. 697, 698 (1974) (per curiam). Ms. Oliphant's comment was *not* directed "at the judge or any officer of the court," the Court did not ask her whether it was, and the Order contains no indications to the contrary. Thus, to the

3

extent that the target of the comment is significant, and the Supreme Court has indicated it is, the Court should entertain Ms. Oliphant's testimony and testimony of others present at the time, many of whom were nearer and better able to observe Ms. Oliphant. Rule 42(a)'s procedures are particularly suited to that purpose, and since no compelling need necessitated Rule 42(b)'s summary proceedings, the Court should revoke its Order and institute proceedings under Rule 42(a) instead.

**II- Ms. Oliphant's isolated instance of foul language did not rise to the level of criminal contempt.**

As an element, a criminal contempt conviction requires the "obstruction of the administration of justice," a rule that is enshrined in statute for the authority of magistrate judges. 28 U.S.C. § 636(e)(2). Obstruction of the administration of justice requires "some act that will interrupt the orderly process of the administration of justice, or thwart the judicial process." *United States v. Warlick*, 742 F.2d 113, 115-16 (4th Cir. 1984). Applying this principle, criminal contempt "require[s] more than just '[t]he vehemence of the language.'" *United States v. Peoples*, 698 F.3d 185, 190 (4th Cir. 2012) (quoting *In re Little*, 404 U.S. 553, 555 (1972)). "To amount to criminal contempt… insult must go beyond affront and in some way obstruct the proceedings or threaten the dispassionate administration of justice." *Gordon v. United States*, 592 F.2d 1215, 1217 (1st Cir. 1979). Profane vitriol directed at the court itself may well support a contempt conviction, but "[o]f course, not every impolite or vulgar remark suffices to justify contempt proceedings. An isolated instance of foul language, not directed at the court or any of its officers, is not necessarily contemptuous." *United States v. Marshall*, 371 F.3d 42, 48 (2d Cir. 2004). As the Supreme Court explained in *Eaton*, a "single, isolated usage of street vernacular, not directed at the judge or any officer of the court, cannot constitutionally support the conviction of criminal contempt." 415 U.S. at 698.

Here, Ms. Oliphant's single statement, though loud and containing a profanity, is not enough to uphold a criminal contempt conviction. Summary contempt convictions have typically included far more egregious conduct than the statement at issue here, all with direct consequences on the administration of justice. *Marshall*, 371 F.3d at 48 (during sentencing, defendant told the judge to "kiss my a** and your wife can suck my d*ck"); *In re Sealed Case*, 627 F.3d 1235, 1236 (D.C. Cir. 2010) (defendant made a "calculated, egregious" outburst during his sentencing, exclaiming "F*ck y'all" after "repeatedly attempt[ing] to interrupt the district judge"); *In re Chaplain*, 621 F.2d 1272, 1273-75 (4th Cir. 1980) (continuous disrespectful shenanigans by pro se litigant during the proceedings). The record here contains no indication that Ms. Oliphant's exclamation interrupted anyone's business, and the Order contains no facts that would indicate an actual obstruction of the administration of justice occurred.

Indeed, from the face of the Order, the only alteration to judicial business came from the contempt proceeding itself. While the Fourth Circuit has held that the "delay and distraction resulting from a court's *investigation* of misconduct can be considered" in determining whether there was an obstruction of the administration of justice, it has never extended this rule to the mere existence of the contempt proceeding itself. *Peoples*, 698 F.3d at 191 (emphasis added). In *Peoples*, for example, the defendant's profane outburst, while occurring between hearings, "targeted" the judge and "threatened judicial authority," necessitating an investigation. *Id.* at 190. Similarly, in *United States v. Warlick,* where the Fourth Circuit adopted its rule, the defendant attorney improperly contacted potential jurors outside of the court and used the results in jury selection. 742 F.2d 113, 116 (4th Cir. 1984). Thus, the court held, "[t]he administration of justice was obstructed because the judge and other court personnel were required to make an immediate investigation into the possibility of jury tampering." *Id.* This type of proceeding—an investigation

5

necessitated after the fact due to contumacious conduct—constitutes obstruction of the administration of justice, even in the conduct itself, standing alone would not. *Id.* The important aspect is the existence of a necessary proceeding beyond the contempt itself; extending the rule to encompass the summary contempt proceeding would effectively write the element of obstructing the administration of justice out of existence, as it would exist in every single case, regardless of whether the defendant's actions were contumacious.

In the absence of evidence of obstruction of the administration of justice, this Court's Order is infirm and should be reconsidered and vacated, and Ms. Oliphant should be released from custody immediately.

### III- Should the Court not reconsider Ms. Oliphant's conviction, her sentence should be reduced to time served.

Should the Court find an actual obstruction of the administration of justice, Ms. Oliphant's sentence should be reduced to time served. Unlike the behavior of other contempt defendants, Ms. Oliphant's statement *was* "mitigated by [a] contemporaneous event that might have induced [her] to surrender to an atypical impulse soon regretted." *Marshall*, 371 F.3d at 48. When she made her statement, Ms. Oliphant was at an emotional extreme: her boyfriend had just pled guilty to a crime that will likely incarcerate him for a substantial period of the rest of his life, in a heated case that went up to the eve of trial. *United States v. Williams*, Case 3:18-cr-117. Her limited experience with the criminal justice system gave her little preparation for dealing with such events, and her statement was a spontaneous outgrowth of that. It was not "calculated, egregious," or "self-evidently intended to show contempt for the court." *Marshall,* 371 F.3d at 48 (profane statements to judge during allocution); *In re Sealed Case*, 627 F.3d at 1236 (same).

In *Marshall*, the Second Circuit noted that courts have other means of enforcing order than through contempt penalties. 371 F.3d at 48. Though immediate penalty was warranted for

6

"calculated, egregious" statements like Marshall's, "in cases less egregious than the present one, a court should warn an attorney, party, or attendee that further instances of particular behavior will be deemed contemptuous before actually charging the offender with contempt." *Id.* Given Ms. Oliphant's role as a spectator and the timing of her outburst at a point where it appeared no judicial business was being conducted, a warning might well have sufficed.

Certainly the week in jail she has already served is sufficient to vindicate this Court's ends, and its impact on Ms. Oliphant and her family is severe. Ms. Oliphant is not wealthy. She struggles to make ends meet. She had to cancel appointments, and could permanently lose customers, not least of all because she had trouble calling them from jail phones. The income she lost over the past week will have a very real effect on her family, and could potentially start a cascade of bills and debts thrusting them into poverty.

Additionally, Ms. Oliphant does not have a long criminal history that would make 10 days in jail a simple matter. This brief stay is the most time she has ever been in prison in her entire life combined—by far. It will be a serious and impactful event on her forever. Under the circumstances, 10 days of incarceration for an emotional exclamation not directed at the Court is unnecessary to vindicate the Court's interests, and its impacts on Ms. Oliphant are too serious to be consistent with the limited intent of the contempt power. Thus, even should Ms. Oliphant's conviction remain intact, her sentence should be reduced to time served.

## CONCLUSION

For the foregoing reasons, this Court should reconsider its Order, and either release Ms. Oliphant immediately to participate in proceedings under Rule 42(a) or reduce her sentence to Time Served.

Respectfully submitted:

<u>s/ John Parke Davis</u>
John Parke Davis
N.C. Bar No. 34427
Federal Public Defender
Western District of North Carolina
129 West Trade Street, Suite 300
Charlotte, NC 28202
(704) 374-0720
(704) 374-0722 Fax
jp_davis@fd.org
*Attorney for Precious Oliphant*

DATE: December 5, 2018