# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF NORTH CAROLINA

## IN RE: PRECIOUS OLIPHANT

On Appeal from The
Honorable David S. Cayer, Magistrate Judge

## BRIEF FOR PRECIOUS OLIPHANT ON APPEAL FROM THE MAGISTRATE JUDGE'S CONTEMPT ORDER

Anthony Martinez
Federal Public Defender for the
    Western District of North Carolina

JP Davis
First Assistant
Federal Public Defender for the
    Western District of North Carolina
129 West Trade Street, Suite 300
Charlotte, NC 28202
(704) 374-0720

Melissa S. Baldwin
Assistant Federal Public Defender
Federal Public Defender for the
    Western District of North Carolina
129 West Trade Street, Suite 300
Charlotte, NC 28202
(704) 374-0720

# Table of Contents

Table of Authorities ..................................................... ii

Introduction ............................................................. 1

Jurisdictional Statement ................................................ 1

Issue Statement ......................................................... 2

Statement of the Case ................................................... 3

Summary of Argument .................................................... 5

Standard of Review ..................................................... 6

Argument ............................................................... 8

    I.    Ms. Oliphant's conduct did not constitute a violation of 18 U.S.C. § 401 ......................................................... 8

    II.   The Magistrate Judge erred in employing summary contempt procedures that deprived Ms. Oliphant of an opportunity to defend herself ....................................................... 12

Conclusion ............................................................. 16

# Table of Authorities

**Page(s)**

## Cases

*Broughton v. North Carolina,*
717 F.2d 147 (4th Cir. 1983)................................................................. 2

*D.S.A. v. Circuit Court Branch 1,*
942 F.2d 1143 (7th Cir. 1991) ............................................................. 2

*Doral Produce Corp. v. Paul Steinberg Assoc., Inc.,*
347 F.3d 36 (2d Cir. 2003) .............................................................. 7, 15

*Eaton v. City of Tulsa,*
415 U.S. 697 (1974) ...................................................................... 6, 8, 9

*In re Chaplain,*
621 F.2d 1272 (4th Cir. 1980) ...................................................... 6, 11, 13

*In re Holloway,*
995 F.2d 1080 (D.C. Cir. 1993) ............................................................ 8

*In re Little,*
404 U.S. 553 (1972) ............................................................................. 1

*In re McConnell,*
370 U.S. 230 (1962) ............................................................................ 7

*In re McDonald,*
819 F.2d 1020 (11th Cir. 1987) ............................................................ 8

*In re Oliver,*
333 U.S. 257 (1948) ......................................................................... 13

*In re Scott,*
605 F.2d 736 (4th Cir. 1979) ............................................................. 13

*Lovern v. Lyons,*
904 F.2d 700, 1990 WL 76511 (4th Cir. 1990) .............................. 1, 11

*Matter of Contempt of Greenberg,*
849 F.2d 1251 (9th Cir. 1988) .......................................................... 14

Case 3:18-mc-00202-GCM   Document 11   Filed 02/21/19   Page 3 of 22

*Sacher v. United States,*
    343 U.S. 1 (1952) ................................................................... 5

*Sibron v. New York,*
    392 U.S. 40 (1968) ................................................................. 2

*Spencer v. Kemna,*
    523 U.S. 1 (1998) ................................................................... 2

*United States v. Arredondo,*
    349 F.3d 310 (6th Cir. 2003) ................................................ 6

*United States v. Azua-Rinconada,*
    --- F.3d ---, 2019 WL 333794 (4th Cir. 2019) ..................... 7

*United States v. Braxton,*
    663 F. A'ppx 253 (4th Cir. 2016) .................................... 12, 14

*United States v. Boston,*
    539 Fed.Appx. 209 (4th Cir. 2013) ..................................... 14

*United States v. Browne,*
    318 F.3d 261 (1st Cir. 2003) .......................................... 7, 14

*United States v. Davis,*
    64 F. App'x 405 (4th Cir. 2003) ..................................... 5, 14

*United States v. Gellis,*
    914 F.2d 1492 (4th Cir. 1990) ............................................. 13

*United States v. Giddins,*
    858 F.3d 870 (4th Cir. 2017) ............................................... 7

*United States v. Glass,*
    361 F.3d 580 (9th Cir. 2004) .......................................... 7, 14

*United States v. Goode,*
    545 F. App'x 197 (4th Cir. 2013) ....................................... 14

*United States v. Juvenile Male,*
    564 U.S. 932 (2011) ............................................................. 2

*United States v. Linney,*
    91 F.3d 135 (4th Cir. 1996) .................................................. 5

Case 3:18-mc-00202-GCM   Document 11   Filed 02/21/19   Page 4 of 22

*United States v. Marshall*,
    371 F.3d 42 (2d Cir. 2004) .............................................................. 5, 11

*United States v. McGainey*,
    37 F.3d 682 (D.C. Cir. 1994) .......................................................... 10

*United States v. Moschiano*,
    695 F.2d 236 (7th Cir. 1982) ........................................................... 8

*United States v. Murphy*,
    326 F.3d 501 (4th Cir. 2003) ........................................................... 6

*United States v. Oberhellmann*,
    946 F.2d 50 (7th Cir. 1991) ............................................................ 10

*United States v. Ortlieb*,
    274 F.3d 871 (5th Cir. 2001) .......................................................... 10

*United States v. Parker*,
    116 F.3d 473 (4th Cir. 1997) ..................................................... 12, 14

*United States v. Peoples*,
    698 F.3d 185 (4th Cir. 2012) .................................................7, 9, 10

*United States v. Perry*,
    116 F.3d 952 (1st Cir. 1997) ........................................................... 5

*United States v. Warlick*,
    742 F.2d 113 (4th Cir. 1984) .......................................................... 10

*United States v. West*,
    21 F.3d 607 (5th Cir. 1994) ............................................................ 11

*United States v. Willett*,
    432 F.2d 202 (4th Cir. 1970) ..................................................... 13, 14

*Vaughn v. City of Flint*,
    752 F.2d 1160 (6th Cir. 1985) ....................................................... 12

**Statutes**

28 U.S.C. § 636 ................................................................................... 1, 4

18 U.S.C. § 401 ............................................................................ 6, 8, 9

Case 3:18-mc-00202-GCM   Document 11   Filed 02/21/19   Page 5 of 22

**Other Authorities**

Brief in Opposition, *Hohn v. United States*,
Case No. 01-1349 (2002) at 15, available at
<https://www.justice.gov/sites/default/files/osg/briefs/2001/01/01/2001-
1340.resp.pdf> ............................................................................................................... 2

Fed. R. Crim. P. 42 ...................................................................................4, 12, 13, 16

# Introduction

"Trial courts…must be on guard against confusing offenses to their sensibilities with obstruction to the administration of justice." *Lovern v. Lyons*, 904 F.2d 700, 1990 WL 76511, *2 (4th Cir. 1990) (quoting *In re Little*, 404 U.S. 553, 555 (1972) (per curiam)). Here, the court erroneously employed its summary contempt power to punish a slight breach of decorum that did not obstruct the administration of justice. Precious Oliphant, a single mother with no criminal record attending court as an audience member, said a single expletive in hearing distance of the court, while she and other spectators were exiting the courtroom immediately after a hearing concluded and before the next one began. For that, she was held in summary criminal contempt without benefit of counsel, received her first criminal conviction, and was sentenced to 10 days incarceration. Because summary contempt proceedings were procedurally and substantively improper, this Court should overturn the magistrate's ruling and exonerate Ms. Oliphant's record.

# Jurisdictional Statement

The magistrate judge exercised jurisdiction with regard to certain pre-trial related matters pursuant to 28 U.S.C. § 636(a), and issued the challenged contempt order under 28 U.S.C. § 636(e)(2). The district court has jurisdiction to review the magistrate judge's contempt order under 28 U.S.C. § 636(e)(7).

While Ms. Oliphant has completed her sentence, the validity of her conviction remains justiciable because challenges to a conviction's validity are protected against

1

mootness by a presumption of collateral consequences. *United States v. Juvenile Male*, 564 U.S. 932, 936 (2011) (per curiam) ("[w]hen [a] defendant challenges h[er] underlying *conviction*, [the Supreme Court's] cases have long presumed the existence of collateral consequences" (emphasis in original)) *Spencer v. Kemna*, 523 U.S. 1, 8 (1998) ("we have been willing to presume that a wrongful criminal conviction has continuing collateral consequences (or, what is effectively the same, to count collateral consequences that are remote and unlikely to occur)").[1] The presumption is only overcome if the government can demonstrate that "there is no possibility that any collateral legal consequences will be imposed on the basis of [Ms. Oliphant's] challenged conviction." *D.S.A. v. Circuit Court Branch* 1, 942 F.2d 1143, 1148 (7th Cir. 1991) (quoting *Sibron v. New York*, 392 U.S. 40, 57 (1968)).

## Issue Statement

Is the utterance of an expletive while court is in session, when the expletive is not directed at the court or any of its officers and no proceeding was taking place, contempt of court? If so, was there sufficient evidence that the misbehavior obstructed the administration of justice and the contemnor possessed criminal intent? And, was it error to use summary procedures that deprived the alleged contemnor of an opportunity to defend herself?

---

[1] Although the Fourth Circuit has dismissed an appeal of a misdemeanor contempt conviction as moot in *Broughton v. North Carolina*, 717 F.2d 147 (4th Cir. 1983), this case has been undermined by later legal developments. *See* Brief in Opposition, *Hohn v. United States*, Case No. 01-1349 (2002) at 15, available at <https://www.justice.gov/sites/default/files/osg/briefs/2001/01/01/2001-1340.resp.pdf>.

2

## Statement of the Case

Ms. Oliphant is a single mother and primary provider for two teenage children. She works as a self-employed hair stylist, renting a chair at a beauty salon by the week, which she pays for out of the earnings she makes from her own customers. Ms. Oliphant has a high school degree, and works side jobs as needed to supplement her income. She had never been convicted of a crime until she attended her boyfriend's court hearing before Magistrate Judge Cayer, where she was summarily adjudicated of criminal contempt and sentenced to ten days imprisonment.

On November 29, 2018, Mr. Williams entered a plea of guilty to attempted murder of a federal employee before Magistrate Judge Cayer. *United States v. Williams*, Case No. 3:18-cr-117, Dkt. Entry for 11/29/2018, Transcript attached as Exhibit A. The Rule 11 hearing proceeded without incident and concluded at 10:40 AM. *Id.* Immediately after the Rule 11 hearing concluded, Ms. Oliphant "began to leave the courtroom along with some other spectators." Order, Dkt. #1 at 1.

As she was exiting, Ms. Oliphant said "piece of shit." Transcript of Summary Contempt Hearing, attached as Exhibit B. The court ordered the marshal to bring Ms. Oliphant before the court and asked for her name and whether she was present on behalf of Mr. Williams. Exhibit B at 2. Ms. Oliphant provided her name and affirmed that she was there to see Mr. Williams. *Id.* The Court then found her in contempt, because she "said an expletive…clearly within the hearing of the court and that constitutes what's called a summary contempt." Exhibit B at 2. After finding her

3

guilty, the court asked if she wanted to say anything before her sentence was imposed, to which Ms. Oliphant replied, "No, Your Honor." *Id.* The court sentenced her to ten days imprisonment. The entire matter—from the expletive's utterance to the sentence—lasted approximately two minutes. *See* Exhibit B (10:40-10:42 AM).

The court subsequently filed a written contempt order pursuant to Rule 42(b).[2] Order, Dkt. #1. The recitation of facts, in its entirety, stated that Ms. Oliphant "shouted 'piece of sh-t!' in a loud angry tone" while leaving the courtroom at the conclusion of the hearing, and that "Court was in session and her voice was loud enough to be heard throughout the courtroom." *Id.* at 1. The Order affirmed the conduct occurred in the court's presence and concluded that it constituted "misbehavior obstructing the administration of justice." *Id.* at 2. According to the order, Ms. Oliphant was advised that she was being held in summary criminal contempt and provided an opportunity to respond. *Id.*

Following the contempt adjudication, Ms. Oliphant was immediately taken into custody to begin serving her sentence. Although she requested counsel and this request was apparently granted the next day, the order appointing counsel was not entered into the record or transmitted to the Federal Public Defender to assign counsel until the sixth day of her ten-day sentence. (Text-Only Order, 3:18-MC-02000 (Dec. 4, 2018)). The day after being appointed, Ms. Oliphant's counsel filed a Motion

---

[2] Rule 42(b) states that: "a magistrate judge may summarily punish a person as provided in 28 U.S.C. § 636(e). The contempt order must recite the facts, be signed by the judge, and be filed with the clerk." Fed. R. Crim. P 42(b).

4

for Reconsideration arguing that the contempt order should be vacated on substantive and procedural grounds. *See* Memorandum in Support of Motion for Reconsideration, Dkt. #3. The Motion for Reconsideration was denied without comment. *See* Text-Only Order, 3:18-MC-00202 (Dec. 6, 2018). Ms. Oliphant completed her sentence, ultimately serving thirteen days due to an error in the United States Marshal's Office.[3]

The Contempt Order was entered on November 29, 2018, Dkt. #1, and Ms. Oliphant timely filed an appeal of the Magistrate Judge's Contempt Order on December 13, 2018, Dkt. #5.

## Summary of Argument

"A court's power of summary contempt is one that 'always, and rightly, is regarded with disfavor.'" *United States v. Linney*, 91 F.3d 135 (4th Cir. 1996) (quoting *Sacher v. United States*, 343 U.S. 1, 8 (1952)). Courts approve of its use for egregious misbehavior that effects a court's business, such as:

- a defendant standing up and urinating during the government's closing argument, *United States v. Perry*, 116 F.3d 952, 954 (1st Cir. 1997),

- telling a judge to "k*ss my a** and your wife can suck my d*ck" during a sentencing, *United States v. Marshall*, 371 F.3d 42, 48 (2d Cir. 2004),

- a defendant walking out mid-sentencing and refusing to come back unless the marshal used physical force, then saying the judge "probably hate[s] all n*ggers" and should be wearing a white robe rather than a black one, *United States v. Davis*, 64 F. App'x 405 (4th Cir. 2003),

---

[3] Mecklenburg County Sheriff's Office, Inmate Inquiry: Precious Oliphant, available at < https://mecksheriffweb.mecklenburgcountync.gov/Inmate/Details?pid=0000385525&jid=18-085059&activeOnly=False&lastName=Oliphant&prisType=ALL&maxrows=48&page=1>.

5

- a pro se litigant engaging in continuous shenanigans that "posed incredibly difficult problems of control upon the district judge" in the course of a hearing, *In re Chaplain*, 621 F.2d 1272, 1273 (4th Cir. 1980),

- calling the judge a "stinky motherf*cker" in the middle of a sentencing, *United States v. Murphy*, 326 F.3d 501, 503 (4th Cir. 2003).

By contrast, Ms. Oliphant's conduct was neither egregious, nor disruptive. She uttered a single expletive, not directed at the court or its officers, while she and other spectators were exiting the courtroom between hearings.

Ms. Oliphant's contempt conviction should be vacated for three reasons. First, her conduct is not contempt as a matter of law. *Eaton v. City of Tulsa*, 415 U.S. 697, 698 (1974) ("The single isolated usage of street vernacular, not directed at the judge or any officer of the court, cannot constitutionally support a conviction of criminal contempt."). Second, in the absence of evidence that Ms. Oliphant's expletive diverted courtroom personnel or interrupted court business, there was insufficient evidence to find she obstructed the administration of justice or possessed the requisite criminal intent. And third, the Magistrate Judge procedurally erred by employing summary contempt proceedings when there was no need for immediate penal vindication and by not providing Ms. Oliphant an opportunity to defend herself.

## Standard of Review

Whether Ms. Oliphant's conduct constitutes contempt of court in violation of 18 U.S.C. § 401 is a mixed legal and factual question. *United States v. Arredondo*, 349

6

F.3d 310, 317 (6th Cir. 2003). As such, it qualifies for independent review. *United States v. Azua-Rinconada*, --- F.3d ---, 2019 WL 333794, *5 (4th Cir. 2019) ("If the inquiry 'calls for application of the controlling legal standard to the historical facts,' it 'presents a mixed question of law and fact qualifying for independent review.'" (quoting *United States v. Giddins*, 858 F.3d 870, 879 (4th Cir. 2017)). Such independent review is necessary in the summary contempt context. *See e.g., In re McConnell*, 370 U.S. 230 (1962) (independently reviewing the record and reversing summary contempt conviction, because it disagreed that facts amounted to an obstruction of justice punishable by summary contempt).[4]

A challenge to the sufficiency of evidence for a contempt conviction is reviewed for substantial evidence, with questions of fact, other than guilt, reviewed for clear error and the determination of the meaning of statutory phrases reviewed de novo. *United States v. Peoples*, 698 F.3d 185, 189 (4th Cir. 2012).

Where the lower court does not make explicit findings that plenary procedure is inadequate and summary procedures necessary, the reviewing court independently reviews the necessity for summary procedures. *United States v. Glass*, 361 F.3d 580, 587

---

[4] There is some ambiguity and uncertainty over the appropriate standard of review for summary contempt orders amongst the Courts of Appeals. *See e.g., Doral Produce Corp. v. Paul Steinberg Assoc., Inc.*, 347 F.3d 36, 38 (2d Cir. 2003) (contempt orders are reviewed for abuse of discretion, "but because of the formidable and potentially harmful nature of the contempt power, this review is more rigorous than in other contexts"); *United States v. Browne*, 318 F.3d 261, 265 (1st Cir. 2003) ("Although appellate review of summary contempt orders is sometimes described as for 'abuse of discretion,' a more exact statement is that factual findings are reviewable for clear error, pure questions of law de novo, and mixed questions by a less certain standard").

(9th Cir. 2004); *United States v. Moschiano*, 695 F.2d 236, 252 (7th Cir. 1982); *but see In re Holloway*, 995 F.2d 1080, 1086 (D.C. Cir. 1993) (decision to employ summary procedures reviewed for abuse of discretion); *In re McDonald*, 819 F.2d 1020, 1024 (11th Cir. 1987) (same).

# Argument

## I. Ms. Oliphant's conduct did not constitute a violation of 18 U.S.C. § 401(1).

Ms. Oliphant's criminal contempt conviction cannot stand. As a matter of law, her conduct cannot support a criminal contempt conviction under Supreme Court precedent. But even if it could, there is insufficient evidence to support it.

"The single isolated usage of street vernacular, not directed at the judge or any officer of the court, cannot constitutionally support a conviction of criminal contempt." *Eaton*, 415 U.S. at 698. That conclusion, reached by the Supreme Court in context of a criminal contempt conviction based on a witness calling his assailant "chicken-shit" during his testimony, is precisely the conduct underlying Ms. Oliphant's conviction. The Magistrate Judge explicitly identified Ms. Oliphant's utterance of a single vulgarity in the courtroom as the basis for her conviction: "You said an expletive. You said it clearly within the hearing of the court and that constitutes what's called a summary contempt." Transcript of Contempt Proceedings at 2, attached as Exhibit A; *see also* Order, Dkt. #1 (no finding that expletive was directed at the judge or officer of the court). If there is any material distinction

8

between a spectator saying "shit" while exiting the courtroom between hearings, and a witness saying "shit" during his testimony, that distinction weighs in favor of Ms. Oliphant. A gratuitous expletive by a testifying witness during trial occurs during and in the course of an official proceeding, and is therefore a much graver breach of decorum than Ms. Oliphant's conduct. Because Ms. Oliphant's mere use of a single expletive, not directed at the judge or any other court officer does not constitute criminal contempt as a matter of law, the Magistrate's contempt order must be reversed and vacated. *Eaton*, 415 U.S. at 698.

But even if the Court were to conclude that the mere utterance of an expletive by a spectator in-between proceedings could be contemptuous, there is insufficient evidence to sustain the conviction here. The Court found Ms. Oliphant guilty of violating 18 U.S.C. § 401(1), which prohibits "misbehavior of any person in [the court's] presence or so near thereto as to obstruct the administration of justice." 18 U.S.C. § 401(1). The elements for this offense are: (1) misbehavior of a person, (2) which is in or near to the presence of the Court, (3) which obstructs the administration of justice, and (4) which is committed with the required degree of criminal intent." *Peoples*, 698 F.3d at 189. Neither the Magistrate's Order nor the contempt proceeding's transcript reveals sufficient evidence to find Ms. Oliphant's behavior obstructed the administration of justice or that she did so intentionally.

"Obstruction of the administration of justice" requires "some act that will interrupt the orderly process of the administration of justice or thwart the judicial

9

process." *United States v. Warlick*, 742 F.2d 113, 115-16 (4th Cir. 1984). Nothing in the record supports a finding that Ms. Oliphant's single expletive obstructed the administration of justice. The Magistrate held the preceding Rule 11 hearing without incident, and Ms. Oliphant's statement only occurred after it concluded, when she "began to leave the courtroom along with some spectators." *See* Exhibit B, Order, Dkt. #1 at 1. The entire matter, from the utterance to the completion of adjudication, took two minutes.[5] *See* Exhibit A. The expletive did not prompt an investigation. *Cf. Warlick*, 742 F.2d at 115-16 (defense attorney hiring a private investigator to contact potential jurors and their family members obstructed the administration of justice, because court had to expend time and money investigating jury tampering in multiple cases). Nor was there any evidence that the expletive diverted courtroom personnel from their duties. *Cf. Peoples*, 698 F.3d at 191 (record supported finding defendant's misbehavior obstructed the administration of justice, because it contained undisputed evidence that the courtroom clerk was delayed in obtaining jury certificates and bringing them to the judge, the courtroom reporter was prevented from finishing the work associated with the day's proceedings, and it caused the court's security officer to leave his post and return to the courtroom). In short, nothing Ms. Oliphant did

---

[5] The minutes expended on the contempt proceeding itself cannot satisfy the obstruction element, as to do so would write the element out of the statute. *United States v. Oberhellmann*, 946 F.2d 50, 53 (7th Cir. 1991) ("The requirement of proving an obstruction of justice obviously cannot be satisfied by proof that the contempt proceeding itself…imposed costs, delays etc. That would read the requirement of proving an obstruction of justice out of the law, for in every case of contempt the contempt proceeding itself imposes burdens that, if imposed by the act alleged to be contemptuous, would satisfy the [element]"); *United States v. McGainey*, 37 F.3d 682, 686 (D.C. Cir. 1994) (agreeing with *Oberhellmann*'s analysis); *see also United States v. Ortlieb*, 274 F.3d 871, 876 (5th Cir. 2001) ("the time consumed by the contempt investigation is not considered" in determining whether an obstruction of administration of justice occurred).

10

interfered with the administration of justice in any way. *See e.g., Lovern*, 904 F.2d 700, 1990 WL 76511, *1-2 ("inappropriate and totally unjustified statements" in Objections to a Magistrate's Report & Recommendation did not constitute an obstruction); *United States v. West*, 21 F.3d 607, 609 (5th Cir. 1994) (government failed to show how defense attorney's "disrespectful remark" during trial obstructed or imminently threatened the administration of justice).

Nor was there evidence that Ms. Oliphant *intended* to obstruct the administration of justice. A contumacious act must be "a volitional (one) done by one who knows or should reasonably be aware that his conduct is wrongful." *In re Chaplain*, 621 F.2d at 1277. The Magistrate made no finding as to Ms. Oliphant's intent, and nothing in the record shows facts from which ill intent may be inferred. *See* Order. To the contrary, the record reveals that, apart from the expletive, Ms. Oliphant was respectful of the court and its duties. She observed the preceding Rule 11 hearing without causing any disturbance, *see* Exhibit A, and when brought before the court for the contempt proceeding was responsive and respectful, Exhibit B.

Ms. Oliphant's conduct—using a single expletive, not directed at anyone, when she and others were exiting the courtroom prior to the next hearing—is not conduct that one should obviously know is wrongful. When confronted with misbehavior that is not egregious, "a court should warn an attorney, party, or attendee that further instances of particular behavior will be deemed contemptuous before actually charging the offender with contempt." *Marshall*, 371 F.3d at 48 (2d Cir. 2004). Indeed,

11

many of the summary contempt convictions affirmed by the Fourth Circuit involved misbehavior that came after a warning. *See e.g., United States v. Parker*, 116 F.3d 473 (4th Cir. 1997); *United States v. Braxton*, 663 F. A'ppx 253, 255 (4th Cir. 2016). Neither the record, nor the Contempt Order demonstrates Ms. Oliphant's criminal intent. *Vaughn v. City of Flint*, 752 F.2d 1160, 1168-69 (6th Cir. 1985) (although contemnor engaged in misbehavior, summary contempt conviction reversed because the district court failed to make findings on contemnor's intent and record refuted deliberate effort to show disrespect for the court).

Because Ms. Oliphant's utterance of a single expletive, not directed at the Court or any of its officers, cannot support a contempt conviction and there is insufficient evidence to establish her intent or an obstruction of the administration of justice, the Magistrate Judge's contempt order must be reversed and the conviction vacated.

## II. The magistrate judge erred in employing summary contempt procedures that deprived Ms. Oliphant of an opportunity to defend herself.

In addition to the substantive issues concerning Ms. Oliphant's contempt conviction, the procedures employed by the Magistrate Judge also constituted reversible error. Specifically, the Magistrate Judge erred in employing summary procedures without considering whether a non-summary proceeding under Rule 42(a) would have sufficed, and further erred by denying Ms. Oliphant an opportunity to defend herself before finding her in contempt.

12

Because summary contempt is exempted from normal due process requirements like notice and an opportunity to defend themselves, its coverage is narrowly prescribed to "misconduct, in open court, in the presence of the judge, which disturbs the court's business, where all of the essential elements of the misconduct are under eye of the court…and where immediate punishment is essential to prevent demoralization of the court's authority before the public." *In re Oliver*, 333 U.S. 257, 275-76 (1948)). Thus, the Fourth Circuit has stated that use of summary contempt power may be inappropriate if "immediate action is [not] required to preserve order in the proceedings and appropriate respect for the tribunal." *In re Chaplain*, 621 F.2d at 1275.

This case did not present a need for "immediate penal vindication." *United States v. Willett*, 432 F.2d 202, 205 (4th Cir. 1970). A single expletive was uttered by a departing spectator, while the courtroom was adjusting from the conclusion of one hearing before moving onto the next. The Contempt Order makes no finding of necessity, and the record does not any consideration as to whether Ms. Oliphant's misbehavior could be handled via non-summary contempt procedures, with their attendant due process protections, under Rule 42. *See* Order, Dkt. #1.

Generally, the Fourth Circuit has affirmed summary contempt convictions that involved disruption of active proceedings. *See e.g.*, *United States v. Gellis*, 914 F.2d 1492 (4th Cir. 1990) (unpublished) (misbehavior during a criminal trial); *In re Chaplain*, 621 F.2d at 1273 (misbehavior during a hearing); *In re Scott*, 605 F.2d 736, 737-38 (4th Cir.

13

1979) (immunized witness's refusal to testify during trial); *United States v. Boston*, 539 Fed.Appx. 209 (4th Cir. 2013) (same); *Parker*, 116 F.3d 473 (unpublished) (misbehavior during sentencing); *Davis*, 64 F. App'x 405 (same); *United States v. Goode*, 545 F. App'x 197, 198 (4th Cir. 2013) (misbehavior during revocation proceeding); *Braxton*, 663 F. App'x at 255 (willfully violating court order during a trial). Ms. Oliphant's conduct is far different—no proceeding was taking place and it was an isolated instance lasting, without exaggeration, little more than a single second. Far more disruptive behavior has been found insufficient to justify using the summary contempt power, such as failure to appear at a hearing, *Willett*, 432 F.2d at 205, or false statements during a pre-trial proceeding, *Glass*, 361 F.3d at 588. Ms. Oliphant's statement may have been a breach of decorum, but it was not "the type of 'exceptional circumstances' that pose an immediate threat to the judicial process." *Matter of Contempt of Greenberg*, 849 F.2d 1251, 1255 (9th Cir. 1988) (defense attorney stating objection "at top of his voice," repeatedly angrily slamming his hands on table, and refusing to follow judge's instructions to sit down was "annoying and not condoned" but did not justify invoking summary contempt power).

Moreover, despite the use of summary procedures, Ms. Oliphant still should have been given *some* opportunity to defend herself. For example, in *Browne*, a summary contempt conviction was reversed where a defendant said "Son of a bitch, damnit" as he was escorted from the courtroom after his sentencing. 318 F.3d at 263 & 268. Although the district judge found the expletive was directed at the court, the

14

First Circuit concluded that it was an abuse of discretion to deny the defendant an opportunity to argue that the remark was not directed at the judge where the record was "unclear" on this point. *Id.* at 266-68. *See also Doral Produce Corp.*, 347 F.3d at 40 (a contemnor should be allowed to speak in his or her defense, notwithstanding the court's employment of summary procedure, absent persuasive justification for the denial). The Magistrate Judge provided Ms. Oliphant with an opportunity to allocute for sentencing purposes, but never provided her an opportunity to defend against the contempt charge itself. The Magistrate Judge simply asked for her name, whether she was present for the defendant in the preceding hearing, and then found her in contempt. *See* Exhibit A.

Had the court permitted Ms. Oliphant a chance to explain her statement, it would have learned that Ms. Oliphant's expletive was not directed at the court, but the result of being emotionally overwhelmed after learning her boyfriend tried to murder someone and was facing 15 years in prison, and she meant no disrespect to the court. Instead, Ms. Oliphant's children spent two weeks motherless when a warning and an apology would have fully vindicated any interests the court might have had. The failure to provide Ms. Oliphant with an opportunity to defend herself in either the summary procedure or in a non-summary procedure was error requiring reversal and remand.

## Conclusion

The contempt order should be vacated because Ms. Oliphant's conduct did not constitute criminal contempt. In the alternative, the contempt order should be vacated and a new hearing should be held where Ms. Oliphant is either provided an opportunity to argue that her utterance did not constitute contempt or provided a non-summary hearing under Rule 42 (a).

Date: February 21, 2019

Respectfully submitted,

Anthony Martinez
Federal Public Defender for the
Western District of North Carolina

/s/Melissa S. Baldwin
Melissa S. Baldwin
MA Bar #690012
JP Davis, First Assistant
Attorneys for Precious Oliphant
Federal Public Defender
129 W. Trade St., Suite 300
Charlotte, NC 28202
(704) 374-0720
Melissa_Baldwin@fd.org