IN THE
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA

_____

No. 3:18-MC-202

_____

IN RE PRECIOUS LATERICA OLIPHANT

_____

Appeal from

The Honorable David S. Cayer, Magistrate Judge

_____

BRIEF OF THE UNITED STATES

_____

R. Andrew Murray                    Stephanie L. Spaugh
United States Attorney              Special Assistant U.S. Attorney
                                    United States Attorney's Office
                                    227 West Trade Street
                                    Carillon Building, Suite 1650
                                    Charlotte, North Carolina 28202
                                    (704) 344-6222

*Attorneys for the United States of America*

i
# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... ii

JURISDICTIONAL STATEMENT .........................................................................................1

ISSUE PRESENTED.................................................................................................................1

STATEMENT OF THE FACTS ...............................................................................................1

SUMMARY OF THE ARGUMENT ........................................................................................2

ARGUMENT

       The Court should uphold Oliphant's conviction
       because Judge Cayer did not plainly err in holding
       her in criminal contempt. ....................................................................................................3

       A.               Standard of Review...................................................................................3

       B.               Discussion ...................................................................................................4

           1.  The court did not plainly err in finding that Oliphant's behavior violated 28
               U.S.C. § 636(e)(2)...........................................................................................5

           2.  Judge Cayer followed the proper procedures to maintain order. .....................10

CONCLUSION.......................................................................................................................12

# TABLE OF AUTHORITIES

**CASES**

*Anderson v. Dunn*,
    19 U.S. 204 (1821) ......................................................................................................4

*Bloom v. State of Ill.*,
    391 U.S. 194 (1968)......................................................................................................4

*Eaton v. City of Tulsa*,
    415 U.S. 697 (1974) ..................................................................................................8, 9

*Ex parte Hudgings*,
    249 U.S. 378 (1919)......................................................................................................4

*Gordon v. United States*,
    592 F.2d 1215 (1st Cir. 1979)...................................................................................6, 10

*Harris v. United States*,
    382 U.S. 162 (1965)......................................................................................................4

*In re Chaplain*,
    621 F.2d 1272 (4th Cir. 1980) ...................................................................................5, 6

*In re Contempt Order*,
    441 F.3d 1266 (10th Cir. 2006) .....................................................................................3

*In re Gates*,
    600 F.3d 333 (4th Cir. 2010) .....................................................................................3, 5

*In re Oliver*,
    333 U.S. 257 (1948)......................................................................................................5

*In re Sealed Case*,
    627 F.3d 1235 (D.C. Cir. 2010).................................................................................6, 11

*Int'l Union, United Mine Workers of Am. v. Bagwell*,
    512 U.S. 821 (1994)......................................................................................................4

*Kiobel v. Millson*,
    592 F.3d 78 (2d Cir. 2010)............................................................................................4

iii

*United States v. Browne*,
318 F.3d 261 (1st Cir. 2003) .................................................................................3

*United States v. Davis*,
64 F. App'x 405 (4th Cir. 2003) .............................................................................6

*United States v. Giovanelli*,
897 F.2d 1227 (2d Cir. 1990) ...........................................................................6, 10

*United States v. Goode*,
545 F. App'x 197 (4th Cir. 2013) .....................................................................3, 5, 6

*United States v. Linney*,
91 F.3d 135 (4th Cir. 1996) ..................................................................................10

*United States v. Lowery*,
733 F.2d 441 (7th Cir. 1984) ..................................................................................9

*United States v. Marshall*,
371 F.3d 42 (2d Cir. 2004).............................................................................4, 8, 11

*United States v. Martin*,
251 F. App'x 979 (6th Cir. 2007) ........................................................................ 4

*United States v. Murphy*,
326 F.3d 501 (4th Cir. 2003) ..................................................................................4

*United States v. Oberhellmann*,
946 F.2d 50 (7th Cir. 1991) ....................................................................................7

*United States v. Peoples*,
698 F.3d 185 (4th Cir. 2012) ........................................................................6, 7, 9, 11

*United States v. Schurring*,
No. 5:15CR186, 2016 WL 2654508 (N.D. Ohio May 6, 2016) ........................................7

*United States v. Warlick*,
742 F.2d 113 (4th Cir. 1984) ..................................................................................8

**STATUTES**

18 U.S.C. § 401(1) ....................................................................................................5, 6

18 U.S.C. § 3571(b)(6) ...................................................................................................10

18 U.S.C. § 3581(b)(8) ...................................................................................................10

28 U.S.C. § 636(e) ...........................................................................................1, 2, 5, 10

## JURISDICTIONAL STATEMENT

Defendant Precious Laterica Oliphant appeals her conviction of criminal contempt found by United States Magistrate Judge Cayer. Section 636(e) of Title 28, United States Code, as amended by the Federal Courts Improvement Act of 2000, sets forth the contempt authority of United States magistrate judges.

Judge Cayer entered a written contempt order on November 29, 2018. Doc. No. 1. Oliphant filed a timely notice of appeal fourteen days later. Doc. No. 5. This Court's appellate jurisdiction is premised on 28 U.S.C. § 636(e)(7) ("The appeal of any other order of contempt issued under this section shall be made to the district court").

## ISSUE PRESENTED

Did Judge Cayer plainly err in using his summary contempt authority to find Oliphant in criminal contempt, where she made a profane outburst in a loud, angry tone that was heard throughout the courtroom while court was in session?

## STATEMENT OF THE FACTS

On November 29, 2018, Magistrate Judge David Cayer was conducting proceedings in Courtroom 1-3 of the United States District Court for the Western District of North Carolina in Charlotte, North Carolina. Oliphant was seated in the courtroom during her boyfriend's Federal Rule of Criminal Procedure 11 hearing in *United States v. Dion Lamar Williams*, 3:18-cr-117. Doc. No. 1, at 1. Oliphant and other spectators began to leave the courtroom once the hearing concluded. *Id.* Before exiting, while still in the courtroom, "Oliphant shouted 'piece of sh-t!' in a loud angry tone" while court was in session. *Id.* Her outburst was so loud that it could be heard

throughout the courtroom.  *Id.*   Upon hearing the outburst, Judge Cayer directed the marshal to bring Oliphant before the court.   Doc. No. 11-2.

Judge Cayer asked Oliphant her name and whether she was present on behalf of the defendant.  *Id.*   Oliphant provided her name and confirmed that she was there on behalf of Williams.  *Id.*   The court then advised her that he had heard what she said and was holding her in summary criminal contempt for her statement.  *Id.*   Judge Cayer explained, "[y]ou said an expletive.   You said it clearly within the hearing of the court and that constitutes what's called a summary contempt."  *Id.*   Judge Cayer then provided Oliphant an opportunity to respond before he imposed a sentence, which she declined.  *Id.*   Judge Cayer imposed a sentence of ten days' imprisonment.  *Id.*   Oliphant was immediately taken into custody to serve her sentence.[1]  *Id.*

The same day, Judge Cayer filed a written order with the clerk.   Doc. No. 1.    The order recited the facts and explained that "Oliphant's conduct occurred in the Court's presence and constituted misbehavior obstructing the administration of justice."  *Id.* at 2.   Oliphant filed a Motion for Reconsideration on December 5, 2018, which was denied the following day.   Doc. No. 2.   Oliphant timely appealed after completing her sentence.   Doc. No. 5.

## SUMMARY OF THE ARGUMENT

Judge Cayer did not plainly err in holding Oliphant in criminal contempt pursuant to 28 U.S.C. §§ 636(e)(2) and (5).   Oliphant showed disrespect for the court's authority and disrupted the court proceedings by shouting a profanity in an aggressive manner while court was in session. This outburst distracted court personnel from their official duties and caused the court to have to

---

[1] While Oliphant's brief states that she had not previously been convicted of a crime, Doc. No. 11, at 9, she in fact was convicted of misdemeanor larceny in Mecklenburg County District Court on July 28, 2010, and received a prayer for judgment continued.

2

take action to deal with Oliphant. Oliphant's actions threatened the dignity of the court and demonstrated a complete disregard for its authority. The magistrate judge had to take immediate action to punish Oliphant because it was necessary to maintain order in the courtroom. Because Oliphant's statement was made in the presence of the judge and her misbehavior obstructed the administration of justice, Judge Cayer properly used summary contempt procedures to find her in criminal contempt.

## ARGUMENT

I. **The Court should uphold Oliphant's conviction because Judge Cayer did not plainly err in holding her in criminal contempt.**

A. **Standard of Review**

Generally, in the Fourth Circuit, "findings of fact underlying a contempt conviction [are reviewed] for clear error, while the ultimate determination of guilt and other questions of law are reviewed de novo." *United States v. Goode*, 545 F. App'x 197, 198 (4th Cir. 2013). The standard of review in summary contempt cases is not well settled. *See, e.g., In re Contempt Order*, 441 F.3d 1266, 1267 (10th Cir. 2006) ("where a magistrate court has issued a summary contempt order, we review for an abuse of discretion"); *United States v. Browne*, 318 F.3d 261, 266 (1st Cir. 2003) (appraising factual findings for clear error, questions of law de novo, and "mixed questions by a less certain standard"). However, it is not necessary to resolve this issue because when a defendant fails to object to a summary contempt conviction, this Court's review is for plain error. *Goode*, 545 F. App'x at 198; *In re Gates*, 600 F.3d 333, 337 (4th Cir. 2010). Because Oliphant failed to object to the contempt proceedings or her conviction, *see* Doc. No. 11-2, she must show: "(1) there was error; (2) the error was plain; and (3) the error affected [her] substantial rights." *Goode*, 545 F. App'x at 198.

3

**B.     Discussion**

Congress granted magistrate judges the power to punish contemptuous behavior in 2000. *Kiobel v. Millson*, 592 F.3d 78, 93–94 (2d Cir. 2010) (Leval, J., concurring).   Summary contempt power "rests on the need to maintain order and a deliberative atmosphere in the courtroom." *Bloom v. State of Ill.*, 391 U.S. 194, 210 (1968).   This power should be exercised when "an open, serious threat to orderly procedure [requires] instant and summary punishment . . . to fill the need for immediate penal vindication of the dignity of the court."   *United States v. Martin*, 251 F. App'x 979, 981 (6th Cir. 2007) (quoting *Harris v. United States*, 382 U.S. 162, 165 (1965)).   "An obstruction to the performance of judicial duty resulting from an act done in the presence of the court is, then, the characteristic upon which the power to punish for contempt must rest."   *Ex parte Hudgings*, 249 U.S. 378, 383 (1919).

"[T]here is an implicit standing order that parties, counsel, and courtroom attendees refrain from direct and egregious insults to judicial authority."   *United States v. Marshall*, 371 F.3d 42, 48 (2d Cir. 2004).   Federal courts have the power "to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates, and, as a corollary to this proposition, to preserve themselves and their officers from the approach and insults of pollution."   *Anderson v. Dunn*, 19 U.S. 204, 227 (1821).   "Without this authority, judicial tribunals would be at the mercy of the disorderly and violent, who respect neither the laws enacted for the vindication of public and private rights, nor the officers charged with the duty of administering them."   *United States v. Murphy*, 326 F.3d 501, 503 (4th Cir. 2003) (internal quotation and citation omitted).

Unlike indirect contempt, which occurs outside the presence of the court and therefore is not a threat to the "court's immediate ability to conduct its proceedings," *Int'l Union, United Mine*

4

*Workers of Am. v. Bagwell*, 512 U.S. 821, 832 (1994), direct contempt occurs in the judge's presence. Behavior constituting direct contempt occurs "in open court, in the presence of the judge, [and] disturbs the court's business, where all of the essential elements of the misconduct are under the eye of the court, are actually observed by the court, and where immediate punishment is essential to prevent demoralization of the court's authority before the public." *In re Oliver*, 333 U.S. 257, 275 (1948) (internal quotation omitted). Because direct contempt threatens the institution of the court, it "may be punished summarily without notice and a hearing." *Gates*, 600 F.3d at 338. A hearing is "not necessary when contumacious conduct occurs in the actual presence of a judge who observes it, and when immediate action is required to preserve order in the proceedings and appropriate respect for the tribunal." *In re Chaplain*, 621 F.2d 1272, 1275 (4th Cir. 1980).

### 1. The court did not plainly err in finding that Oliphant's behavior violated 28 U.S.C. § 636(e)(2).

Judge Cayer found that Oliphant violated 28 U.S.C. § 636(e)(2), which prohibits "contempt of the authority of such magistrate judge constituting misbehavior of any person in the magistrate judge's presence so as to obstruct the administration of justice." This statute mirrors 18 U.S.C. § 401(1), which forbids "misbehavior of any person" in a court of the United States "or so near thereto as to obstruct the administration of justice." Criminal contempt has four elements: "(1) misbehavior of a person, (2) which is in or near to the presence of the Court, (3) which obstructs the administration of justice, and (4) which is committed with the required degree of criminal intent." *Goode*, 545 F. App'x at 198 (internal quotation and citation omitted) (discussing criminal contempt under § 401(1)). Oliphant does not contest the first two elements. In reviewing a

5

judge's finding of contempt, the court considers the entire course of contemptuous conduct. *See Chaplain*, 621 F.2d at 1277.

Obstructing the administration of justice in this context "lacks precise definition" but "requires some act that will interrupt the orderly process of the administration of justice, or thwart the judicial process." *United States v. Peoples*, 698 F.3d 185, 189 (4th Cir. 2012) (internal quotation omitted). The effect of the obstructive conduct does not have to be great. *Id.* at 191. "An outburst of foul language directed at the court is intolerable misbehavior in the courtroom and falls within the prohibition of section 401(1) and Federal Rule of Criminal Procedure 42(b)." *In re Sealed Case*, 627 F.3d 1235, 1238 (D.C. Cir. 2010). A defendant's conduct is sufficient to satisfy the obstruction element if it "distracted court personnel from, and delayed them in, completing their duties." *Goode*, 545 F. App'x at 198 (internal quotation and alteration omitted). "Although the line between insult and obstruction is difficult to discern, there is a point at which mere words are so offensive and so unnecessary that their very utterance creates a delay which is an obstruction of justice." *Gordon v. United States*, 592 F.2d 1215, 1217 (1st Cir. 1979). "To affront the dignity of the court the misbehavior need not insult the judge personally, but may consist of threats, disrespect or other like behavior." *United States v. Giovanelli*, 897 F.2d 1227, 1232 (2d Cir. 1990); s*ee also United States v. Davis*, 64 F. App'x 405 (4th Cir. 2003) (finding sufficient evidence to support contempt conviction when defendant's behavior interrupted conclusion of sentencing hearing and "his subsequent inflammatory remarks were clearly directed at disrupting the respect and decorum of the court").

Here, the record is clear that Oliphant's conduct obstructed the administration of justice. Her utter disrespect affronted the dignity of the court and disturbed its business. She disrupted

6

the entire courtroom by yelling loudly enough that everyone could hear. Not only did she shout in open court, her expletive, "piece of sh-t!", was clearly directed at someone and her tone was angry. Oliphant's behavior forced the court and its personnel to stop their official business and investigate her conduct. A marshal had to leave his post to stop Oliphant and bring her to the center of the courtroom. The clerk had to create a case for Oliphant's matter and complete the proper documentation. Moreover, all courtroom personnel, including the judge, were delayed from moving on to the next matter on the docket. Therefore, numerous court officials were obstructed as contemplated by the contempt statute. *See United States v. Schurring*, No. 5:15CR186, 2016 WL 2654508, at *5 (N.D. Ohio May 6, 2016) (finding sufficient obstruction where two deputies had been delayed from their normal duties because they had to discuss the conduct which delayed one from leaving the courtroom and the other was required to fill out a report); *see also Peoples*, 698 F.3d at 191 (holding that misbehavior "delayed court personnel in and distracted them from the performance of their judicial duties" where judge was in jury room but the outburst forced court personnel "to leave the work that they were doing and deal with the statement that the defendant made").

Oliphant's reliance on the Seventh Circuit's decision in *United States v. Oberhellmann*, 946 F.2d 50, 53 (7th Cir. 1991), to show that the time spent on the contempt proceedings does not satisfy the obstruction element is misplaced. The Fourth Circuit rejected this argument in *Peoples*, holding "the delay and distraction resulting from a court's investigation of misconduct can be considered in determining if a defendant has obstructed the administration of justice." *Peoples*, 698 F.3d at 191.

Oliphant's egregious behavior was undoubtedly volitional. A wrongful state of mind is a necessary element of contempt. The criminal intent necessary is "a volitional act done by one who knows or should reasonably be aware that his conduct is wrongful . . . of course, an actual design to subvert the administration of justice is more grievous and perhaps more culpable state of mind, but proof of such an evil motive is unnecessary to establish the required intent." *United States v. Warlick*, 742 F.2d 113, 117 (4th Cir. 1984) (internal quotation omitted).

Oliphant's use of profanity was "self-evidently intended to show contempt for the court." *Marshall*, 371 F.3d at 46. Her timing was calculated to disrupt the courtroom as it moved on to the next matter. She sat through the entire seventeen minutes of the Rule 11 hearing, but then just before escaping the courtroom, she yelled loudly enough to be heard throughout. This was no accidental slip of the tongue. This was designed so that she could display her anger and then quickly leave to avoid the consequences. Any reasonable person would know that it is wrongful to yell profanity in a court of law, particularly while the judge is on the bench. Moreover, Oliphant, a person with a larceny conviction who has been in court before for her own case, is certainly familiar with acceptable courtroom behavior.

Oliphant does not deny that she shouted profanity in a loud, angry tone. Instead, she asserts that as a matter of law, her words cannot support a criminal contempt conviction, relying primarily on the Supreme Court's decision in *Eaton v. City of Tulsa*, 415 U.S. 697, 698 (1974). Doc. No. 11, at 14. Oliphant's reliance on *Eaton* is misplaced. In *Eaton*, the defendant was convicted of direct contempt under a municipal ordinance for referring to his assailant as "chicken shit" in response to a question on cross-examination. *Eaton*, 415 U.S. at 697. The Supreme

8

Court stated that "[t]his[2] single isolated usage of street vernacular, not directed at the judge or any officer of the court, cannot constitutionally support the conviction of criminal contempt." *Id.* at 698. It went on to explain that "[t]he vehemence of the language used is not alone the measure of the power to punish for contempt. The fires which it kindles must constitute an imminent, not merely a likely, threat to the administration of justice." *Id.* Holding that the evidence did not support a conviction for contempt, the Court reasoned that such use of the expletive did not constitute an imminent threat to the administration of justice because "[i]n using the expletive in answering the question on cross-examination it is not charged that (petitioner) here disobeyed and (sic) valid court order, talked loudly, acted boisterously, or attempted to prevent the judge or any other officer of the court from carrying on his court duties." *Id.* (internal quotation omitted).

By contrast, here, Oliphant was not a witness in the court proceedings responding to a question about her assailant. She was a spectator in the courtroom. And she did not merely say, "piece of sh-t," she shouted it loudly enough to be heard throughout the courtroom while court was in session. Moreover, in *Eaton*, it was abundantly clear that the language used was directed at the alleged assailant, not a court official. Accordingly, *Eaton* is clearly distinguishable as it addressed only a comment by a witness during his testimony.

Courts have upheld contempt convictions in situations involving far less egregious behavior. *Cf. United States v. Lowery*, 733 F.2d 441, 445 (7th Cir. 1984) (finding a line of questioning on cross-examination to be contemptuous); *Peoples*, 698 F.3d at 193 (upholding contempt conviction where defendant reentered courtroom while judge was off the bench and repeated "[t]ell Judge Currie get the f——off all my cases. I started to tell her something there. I

---

[2] Oliphant's brief mistakenly begins this quote with the word "the" instead of "this." Doc. No. 11, at 12, 14.

started to tell her ass something today"); *Giovanelli*, 897 F.2d at 1232 (affirming summary contempt conviction where attorney stated in the presence of portion of the jury "I won't pay. You can put me in jail, Judge" after being found in contempt). Here, Judge Cayer did not plainly err in holding that Oliphant's disruptive and offensive conduct constituted criminal contempt.

### 2. Judge Cayer followed the proper procedures to maintain order.

Magistrate Judge Cayer did not plainly err in using summary proceedings to address misbehavior committed in his presence. Magistrate judges are authorized to conduct summary criminal contempt proceedings in any case before the judge. 28 U.S.C. § 636(e). Magistrate judges are authorized "to punish summarily by fine or imprisonment, or both, such contempt of the authority of such magistrate judge constituting misbehavior of any person in the magistrate judge's presence so as to obstruct the administration of justice." 28 U.S.C. § 636(e)(2). "The sentence imposed by a magistrate judge for any criminal contempt [under 28 U.S.C. §§ 636(e)(2) and (3)] shall not exceed the penalties for a Class C misdemeanor as set forth in sections 3581(b)(8) and 3571(b)(6) of title 18." 28 U.S.C. § 636(e)(5). Therefore, a person found guilty of such provisions of criminal contempt faces up to thirty days' imprisonment (18 U.S.C. § 3581(b)(8)) and a $5,000.00 fine (18 U.S.C. § 3571(b)(6)).

Summary procedures are necessary to protect the court's authority in a variety of situations, including the disruption of a hearing, obstruction of court proceedings, and threats to the judge. *United States v. Linney*, 91 F.3d 135 (4th Cir. 1996) (unpublished). A warning is not required when the offense constitutes self-noticing conduct that represents "an open declaration of war on the court's authority." *Gordon*, 592 F.2d at 1219 n. 3.

10

"Misbehavior in the courtroom, at any time, carries the potential to obstruct justice." *Sealed Case*, 627 F.3d at 1237 (rejecting the premise that obstruction cannot occur in the absence of ongoing court proceedings). It is not necessary that contemptuous conduct occur during ongoing court proceedings. *Peoples*, 698 F.3d at 191. Even if there technically was no court hearing taking place during Oliphant's outburst, it was so close in time to an actual proceeding that it was still contemptuous. *See id.* at 192 ("a conviction for criminal contempt. . . may rest on conduct taking place 'near' actual court proceedings, in time or location"). The judge was still on the bench, the Rule 11 hearing had just concluded, and there were additional matters still before the court.

Oliphant contends that she should have been warned by Judge Cayer about her behavior before he charged her with contempt. However, there is no requirement to warn someone before holding her in contempt, and warning Oliphant would have been futile because she waited until she was on her way out of the door to misbehave. To warn someone who behaved in such a deliberate manner would have undermined respect for the rule of law and "encourage[d] a culture of 'can you top this' in hurling egregious—albeit brief—insults at the court." *Marshall*, 371 F.3d at 48. This is precisely why it was necessary for Judge Cayer to use his summary contempt power to immediately discipline Oliphant. To let Oliphant leave court unpunished would have invited disorder by other courtroom attendees and undermined respect for the tribunal. Moreover, when given the opportunity to explain herself and prove her true intent, she did not indicate that it was a mistake or had in fact been directed elsewhere. She had nothing to say to the court.

Oliphant argues that she should have been given an opportunity to defend herself. However, Judge Cayer did in fact offer her an opportunity to speak, which she declined. First, he

11

asked her name and what her involvement was. He explained that he heard what she said and how it constituted contempt, then asked if she wanted to say anything before he imposed a sentence. She never used these opportunities to speak or say anything to explain herself or apologize. Oliphant was given a chance to say what she wanted but did not take advantage of that opportunity. Given the immediate need to address Oliphant's outburst and to preserve the court's authority, the magistrate judge did not err in using summary proceedings to hold her in contempt.

## CONCLUSION

Judge Cayer did not err, plainly or otherwise, in his decision. He witnessed Oliphant's conduct first-hand in his courtroom and determined that her actions constituted misbehavior that obstructed the administration of justice. Because the magistrate judge properly found that Oliphant's conduct constituted criminal contempt and used the summary contempt power appropriately, the Government respectfully requests that this Court affirm Judge Cayer's contempt order.

Respectfully submitted, this the 14th day of March, 2019.

R. ANDREW MURRAY
UNITED STATES ATTORNEY
s/ Stephanie Spaugh
Stephanie Spaugh
Special Assistant United States Attorney
NC Bar Number: 47877
227 West Trade Street
Carillon Building, Suite 1650
Charlotte, North Carolina 28202
Telephone: (704) 344-6222
E-mail: Stephanie.spaugh@usdoj.gov

12